# EXHIBIT A

Hearing Date: 7/3/2023 10:00 AM
Location: Court Room 2410
Judge: Loftus, Anna M.

Case: 1:23-cv-03717 Document #: 2-4 Filed: 06/12/23 Page 2 of 17 PageID #:11

FILED
3/3/2023 2:11 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH02162
Calendar, 15
21719587

FILED DATE: 3/3/2023 2:11 PM 2023CH02162

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| HEAVEN THOMPSON, CHRISTINA POST, and MORGAN BENOIT, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, and AMAZON SERVICES, LLC,<br><br>Defendants. | Case No. 2023CH02162<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

Plaintiffs Heaven Thompson, Christina Post, and Morgan Benoit (collectively, "**Plaintiffs**"), by their undersigned attorneys, on their own behalf and on behalf of all others similarly situated, upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, brings this action against Amazon.com, Inc., Amazon.com Services, LLC, and Amazon Services, LLC (collectively, "**Defendants**" or "**Amazon**") for its violations of Plaintiffs' privacy rights guaranteed under the Illinois Genetic Information Privacy Act, 410 Illinois Compiled Statute ("**ILCS**") 513 *et seq.* (hereinafter "**GIPA**"), and alleges as follows:

**NATURE OF THE ACTION**

1. Unlocking the human genetic code came with it the potential for hitherto unfathomable medical development. It permitted individuals to learn in detail the possibilities that were hidden within their genome. For the first time, women can now learn whether they are

1

predisposed to get breast cancer; families can trace their genetic lineage back thousands of years, and law enforcement can use DNA samples to identify criminals.

2. However, all of this information can only be obtained if people are willing to allow sharing of genetic information, and that is only possible if people know that their genetic information will not be used against them in future employment, insurance or other situations. For example, few women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs, or prevented from obtaining life insurance.

3. The Illinois Legislature enacted GIPA in 1998 with the goal to protect Illinois residents from having their genetic information being used against them in employment settings.

4. Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this same information could be used by employers to discriminate against them.

5. Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

6. To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

7. Despite GIPA's prohibitions, some companies in Illinois still ask their employees or applicants to provide protected family medical history when making hiring determinations and job assignments in blatant violation of the law.

FILED DATE: 3/3/2023 2:11 PM 2023CH02162

8. Defendants chose to repeatedly disregard Illinois' genetic privacy laws by asking their employees to provide genetic information in the form of family medical history to assist the companies in making employment decisions.

9. Accordingly, Plaintiffs seek on behalf of themselves, and all of Defendants' other similarly situated employees in the state, an order: (i) requiring Defendants to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiffs and the members of the proposed Class.

## PARTIES

10. Plaintiff Heaven Thompson is and was during relevant times of employment with Amazon, an individual citizen of the State of Illinois. Ms. Thompson currently resides in Bourbonnais, Illinois.

11. Plaintiff Christina Post is and was during relevant times of employment with Amazon, an individual citizen of the State of Illinois. Ms. Post currently resides in Kankakee, Illinois.

12. Plaintiff Morgan Benoit is and was during relevant times of employment with Amazon, an individual citizen of the State of Illinois. Ms. Benoit currently resides in Chicago, Illinois.

13. Amazon is a Delaware corporation with its headquarters located at 410 Terry Avenue North, Seattle, WA, 98109. The company conducts business throughout this County, the State of Illinois, and the United States. Amazon is a major employer in the state of Illinois, with approximately 36,000 employees in the state. Illinois is home to numerous Amazon facilities, such as warehouses and fulfillment centers in Wilmington, Joliet, Aurora, Crest Hill, Edwardsville, Minooka, Monee, Romeoville, Waukegan, Wilmington, and Wood Dale, among others.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure because Defendants conduct business transactions in Illinois and have committed tortious acts in Illinois.

15. Venue is proper in Cook County because Defendants operate throughout this County and "reside" in Cook County within the meaning of 735 ILCS 5/2-102(a).

## ILLINOIS GENETIC INFORMATION PRIVACY ACT ("GIPA")

16. During the 1990's the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great achievements of human history, and said: "Today we are learning the language with which God created life[.]"[1]

17. However, like any great leap in human understanding, learning the meaning of people's genetics came with many concerns. One movie released around this time, the dystopian science fiction movie *Gattaca*, attempted to show how this new technology could be abused. The movie conjured a not-too-distant future where genetic discrimination was rampant. In the movie, companies segregated people based on their genetic profiles, those with better genetic profiles (i.e. genetically engineered humans) were eligible for professional employment, while others with less desirable genetics (e.g., susceptibility to heart disease or cancer) were unemployable or relegated to menial jobs. Since its release, the film has been regularly used in schools to show the possible misuses of genetic information.[2]

---

[1] *Scientists Complete Rough Draft of Human Genome* (N.Y. Times June 26, 2000) *available at* https://archive.nytimes.com/www.nytimes.com/library/national/science/062600sci-human-genome.html?amp;sq=francis%252520collins&st=cse&scp=23 (last viewed on March 1, 2023).
[2] *What Do People Who Work in Genetics Think About Gattaca 25 Years After Its Release* (Slate Aug. 15,

FILED DATE: 3/3/2023 2:11 PM 2023CH02162

18. Illinois stood at the forefront of protecting its citizens from the abuse of this technology when it first passed GIPA in 1998. According to the Illinois Legislature, the intent of GIPA is to protect an individual from their genetic information (such as family medical history) being used against them in a discriminatory manner. Limiting the use or requests for protected genetic information is a key component of health information privacy. 410 ILCS 513/5(1)-(5).

19. The Illinois Legislature amended GIPA in 2008 to increase its protections and harmonize Illinois state law with the then-recently passed Federal Genetic Information Nondiscrimination Act of 2008 ("**GINA**"), 110 P.L. 233; see also 42 U.S.C. § 2000ff. The 2008 amendments to GIPA sought to further prohibit discriminatory practices of employers through the use of genetic information of employees, including such employees' family medical history.

20. During discussions of the 2008 GIPA amendments, the Illinois Legislature recognized the importance of safeguarding family medical history due to the fact that it is akin to knowledge of genetic predispositions:

> I hope the [legislature] understands the importance of [family medical history]; it's becoming more and more important. Back in '96 or '97, I had a third generation ovarian cancer survivor that came to me with this issue. … If a woman has … the gene that causes breast cancer, she can have up to an 84 percent probability that she will develop breast cancer sometime in her life … it's important that we help people be able to know that information and know they won't be discriminated against in their employment … . Quite honestly, with genetic information we have today, we could identify a pool of people that … no one would want to employ. [GIPA] helps guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34.

21. To accomplish the Illinois Legislature's goal of ensuring that genetic information is not used to discriminate against employees, GIPA adopted GINA's definition of "genetic

---

2022) *available at* https://slate.com/technology/2022/08/gattaca-25th-anniversary-genetics-crispr.html (last viewed on March 1, 2023).

5

information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; *see* 45 C.F.R. § 160.103.

22. GIPA bars employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of applicants or employees. Specifically, GIPA states: "An employer … shall not directly or indirectly do any of the following:

> **(1)** solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, … as a condition of employment, preemployment application…;
>
> **(2)** affect the terms, conditions, or privileges of employment, preemployment application, … or terminate the employment, … of any person because of genetic testing or genetic information with respect to the employee or family member…;
>
> **(3)** limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, …; and
>
> **(4)** retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c). Nor may an employer or prospective employer enter into an agreement with a person to take a genetic test. 410 ILCS 513/25(d).

23. Even if an employer otherwise obtains genetic information lawfully it still may not use or disclose the genetic information in violation of GIPA. 410 ILCS 513/25(j).

24. In order to enforce these and other requirements, GIPA provides individuals with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have

6

a right of action … against an offending party." 410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater for a negligent violation or $15,000 or actual damages, whichever is greater for a willful violation; (b) reasonable attorneys' fees; and (c) "[s]uch other relief, including an injunction, as the … court may deem appropriate." *Id.*

25. Plaintiffs are not required to allege or prove actual damages in order to state a claim under GIPA, and they can seek statutory damages under GIPA as compensation for the injuries caused by Defendants. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Illinois Biometric Privacy Act ("**BIPA**")] in order to qualify as an "aggrieved person" under BIPA); see also *Bridges v. Blackstone Grp., Inc.*, 2022 U.S. Dist. LEXIS 121205, *8 (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the *Rosenbach* court to alleged violations of GIPA).

26. Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

### PLAINTIFF SPECIFIC ALLEGATIONS

#### PLAINTIFF CHRISTINA POST

27. Plaintiff Christina Post submitted an application to Amazon for the position of Op Operator on or about August 19, 2022.

28. On or about August 19, 2022, during the application and hiring process, Amazon indirectly or directly solicited, requested, or required Ms. Post to disclose her family medical history. Specifically, Ms. Post was required to submit to a pre-employment physical as a

7

requirement of the hiring process. During the physical, Amazon indirectly or directly solicited, requested, or required Ms. Post to disclose her family medical history.

29. In response, Ms. Post disclosed genetic information, including conditions that her family members had been diagnosed with.

30. Ms. Post was not directed by Amazon, either verbally or in writing, to not disclose genetic information.

31. On or about September 7, 2022, Ms. Post was hired by Amazon as an Op Operator after completing all required steps in the hiring process. Ms. Post's job duties included picking items to be shipped to customers in fulfilment of customer orders, auditing bins containing the items for shipment, and ensuring other employees wore protective gear at the fulfilment center.

32. Ms. Post was employed by Amazon at the Amazon fulfillment center in Wilmington, Illinois located at 30260 S. Graaskamp Boulevard, Wilmington, IL 60481 from on or about September 7, 2022, through the present date.

33. Ms. Post did not provide prior, knowing, voluntary, and written authorization to Amazon for the use of her genetic information in furtherance of a workplace wellness program.

**PLAINTIFF HEAVEN THOMPSON**

34. Plaintiff Heaven Thompson submitted an application to Amazon for the position of Stower on or about February 22, 2021.

35. On or about February 22, 2021, during the application and hiring process, Amazon indirectly or directly solicited, requested, or required Ms. Thompson to disclose her family medical history. Specifically, on or about February 22, 2021, during the application and hiring process, Ms. Thompson was required to submit to a pre-employment physical as a requirement in the hiring process. During the physical, Amazon indirectly or directly solicited, requested, or required Ms. Thompson to disclose her family medical history.

8

36. In response, Ms. Thompson disclosed genetic information, including conditions that her family members had been diagnosed with.

37. Ms. Thompson was not directed by Amazon, either verbally or in writing, to not disclose genetic information.

38. On or about March 11, 2021, Ms. Thompson was hired by Amazon as a Stower after completing all required steps in the hiring process. Ms. Thompson's job duties included scanning products with a handheld scanner and physically placing them into various bar-coded shelf locations and bins to be pulled for the fulfillment of customer orders.

39. Ms. Thompson was employed by Amazon at the Amazon fulfillment center in Monee, Illinois located at 6605 W Monee Manhattan Rd, Monee, IL 60449 from on or about March 11, 2021, through on or about September 1, 2021.

40. Ms. Thompson did not provide prior, knowing, voluntary, and written authorization to Amazon for the use of her genetic information in furtherance of a workplace wellness program.

**PLAINTIFF MORGAN BENOIT**

41. Plaintiff Morgan Benoit submitted an application to Amazon for the position of Stower on or about December 1, 2021.

42. On or about December 1, 2021, during the application and hiring process, Amazon indirectly or directly solicited, requested, or required Ms. Benoit to disclose her family medical history. Specifically, on or about December 1, 2021, during the application and hiring process, Ms. Benoit was required to submit to a pre-employment physical in as a requirement in the hiring process. During the physical, Amazon indirectly or directly solicited, requested, or required Ms. Benoit to disclose her family medical history.

43. In response, Ms. Benoit disclosed genetic information, including conditions that her family members had been diagnosed with.

44. Ms. Benoit was not directed by Amazon, either verbally or in writing, to not disclose genetic information.

45. On or about December 1, 2021, Ms. Benoit was hired by Amazon as a Transportation, Operations, and Management Team Associate after completing all required steps in the hiring process. Ms. Benoit's job duties included scanning products with a handheld scanner and physically placing them into various bar-coded shelf locations and bins to be pulled for the fulfillment of customer orders.

46. Ms. Benoit was employed by Amazon at the Amazon fulfillment center in Markham, Illinois located at 2210 W. 159th Street, Markham, IL 60428 from on or about December 1, 2021, through on or about January 31, 2022.

47. Ms. Benoit did not provide prior, knowing, voluntary, and written authorization to Amazon for the use of her genetic information in furtherance of a workplace wellness program.

**DEFENDANTS VIOLATE GIPA AS A MATTER OF COURSE**

48. Based on Plaintiffs' experience, they believe that, during the hiring process, Defendants ask employees and/or prospective employees to provide family medical histories as a condition of employment and/or as part of its hiring process.

49. Plaintiffs understand, on information and belief, that Defendants, or agents on its behalf, requests this family medical history information for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions and staffing assignments.

50. On information and belief, Defendants request this family medical history information as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions,

diabetes and stroke, that Defendants believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding.

51. Defendants were or should have been aware of its obligations under GIPA. Nevertheless, Defendants intentionally and/or recklessly captured, collected, and/or retained Plaintiffs' genetic information in the form of their family medical history in violation of Illinois law.

52. As a result, Defendants' violation was willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

## CLASS ACTION ALLEGATIONS

53. **Proposed Class Definition**: Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class (the "**Class**") of similarly situated individuals, defined as follows:

54. The Class brought by Plaintiffs consists of:

> All individuals, from the date five years prior to the date of the filing of this action to the date of class certification of this action, (1) who applied for employment with Defendants or were employed by Defendants in Illinois, and (2) from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical history, in connection with the person's application for employment or the person's employment with Defendant.

Excluded from the class are Defendants' officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

55. Plaintiffs reserve the right to modify this class definition as they obtain relevant information, including employment records, through discovery.

56. **Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but Defendants employ thousands of people in Illinois, and it is believed

11

that all of those individuals will fall within the proposed Class. Therefore, it is clear that individual joinder in this case is impracticable. Proposed Class Members can easily be identified through Defendants' employment records.

57. **Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the proposed Class Members, and those questions predominate over any questions that may affect individual proposed Class Members. Common questions include, but are not limited to, the following:

   a. whether Defendants, or an agent acting on behalf of Defendants, solicited, requested, captured or collected family medical history of prospective employees;

   b. whether Defendants, or an agent acting on behalf of Defendants, solicited, requested, captured or collected family medical history of existing employees;

   c. whether Defendants obtained genetic information from Plaintiffs and the class by asking for family medical history; and

   d. whether Defendants' solicitation, request, collection, or use of genetic information constituted a violation of GIPA.

58. **Typicality**: Plaintiffs' claims are typical of the claims of the proposed Class members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs is entitled to relief under the same causes of action and upon the same facts as the other Members of the proposed Class.

59. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs has no interests antagonistic to those of the class, and Defendants has no defenses unique to Plaintiff.

60. **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is

12

impracticable. Even if proposed Class Members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

### COUNT I
### VIOLATION OF 410 ILCS 513/25
### SOLICIT, REQUEST AND/OR REQUIRE GENETIC INFORMATION OF A PERSON OR A FAMILY MEMBER OF A PERSON AS A CONDITION OF EMPLOYMENT OR PREEMPLOYMENT APPLICATION

61. Plaintiffs incorporates the foregoing allegations as if fully set forth herein.

62. Defendants are a corporation and employ individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

63. Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

64. Plaintiffs were individually asked to provide, and did provide, family medical history as a condition of employment during the application and hiring process to work for Defendants.

65. Defendants, or an agent acting on its behalf, solicited, requested, or required Plaintiffs to disclose family medical history as a condition of employment during the application and hiring process to work for Defendants.

13

66. Defendants indirectly solicited, requested, or required Plaintiffs to disclose family medical history during a pre-employment physical as a condition of employment during the application and hiring process to work for Defendants.

67. Plaintiffs were not directed, either verbally or in writing, not to provide genetic information when compelled for their family medical history.

68. After providing their family medical history, Plaintiffs were offered and accepted employment with Defendants in Illinois.

69. Plaintiffs and the proposed Class Members were aggrieved by Defendants' violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendants directly or indirectly solicited, requested and/or required them to disclose their genetic information as a condition of ongoing employment or a condition of a preemployment application.

70. By indirectly or directly soliciting, requesting and/or requiring Plaintiffs and the proposed Class Members to provide their genetic information as described herein, Defendants violated Plaintiffs' and the proposed Class Members' rights to privacy in their genetic information as set forth in GIPA.

71. On behalf of themselves and the proposed Class Members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring each Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation

FILED DATE: 3/3/2023 2:11 PM 2023CH02162

FILED DATE: 3/3/2023 2:11 PM  2023CH02162

of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Class of similarly situated individuals, pray for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the proposed Class as defined herein;

B. Designating and appointing Plaintiffs as representatives of the proposed Class and Plaintiffs' undersigned counsel as Class Counsel;

C. Declaring that Defendants' actions, as set forth above, violate GIPA;

D. Awarding Plaintiffs and the proposed Class Members statutory damages of $15,000 or actual damages, whichever is greater, for *each* intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2), or statutory damages of $2,500 or actual damages, whichever is greater, for *each* negligent violation of GIPA pursuant to 410 ILCS 513/40(1);

E. Declaring that Defendants' actions, as set forth above, were intentional or reckless and/or Declaring that Defendants' actions, as set forth above, were negligent;

F. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class, including an Order prohibiting Defendants from soliciting, requesting and/or requiring genetic information as a condition of employment or in a preemployment application pursuant to GIPA;

G. Awarding Plaintiffs and the proposed Class Members reasonable attorneys' fees and costs incurred in this litigation pursuant to 410 ILCS 513/40(3);

H. Awarding Plaintiffs and the proposed Class pre- and post-judgment interest, to the extent allowable; and

I. Granting all such other and further relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: March 3, 2023                              Respectfully submitted,

                                                  */s/ Edward Wallace*

15

FILED DATE: 3/3/2023 2:11 PM 2023CH02162

Edward A. Wallace
Mark R. Miller
Molly C. Wells
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
E. eaw@wallacemiller.com
 mrm@wallacemiller.com
 mcw@wallacemiller.com
Firm ID: 65958

Elizabeth Brehm, Esq.*
Kyle McLean, Esq.*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
T. 212-532-1091
E. ebrehm@sirillp.com
 kmclean@sirillp.com

COUNSEL FOR PLAINTIFFS

*(*Pro Hac Vice* To Be Filed)

16